AO 91 (Rev. 11/11)  Criminal Complaint

**FILED**

## UNITED STATES DISTRICT COURT
for the
Northern District of California

DEC 11 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America<br>v.<br><br>Froylan Sanchez, a/k/a Froylan Azhea Martinez-Sanchez, a/k/a Daniel Sanchez Bustos AND Jose Ivan Sanchez,<br><br>*Defendant(s)* | )<br>)<br>)  Case No.  3 19 72010<br>)<br>)<br>)         **MAG**<br>) |

### CRIMINAL COMPLAINT

**UNDER SEAL**

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of ___8/23/19 to 11/7/19___ in the county of ___Napa___ in the
___Northern___ District of ___California___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C) | Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine and Cocaine |

This criminal complaint is based on these facts:

Please see the attached affidavit of HSI Special Agent Landon C. Hoffman

Approved as to form  ___Sloan Heffron___
    AUSA Sloan Heffron

☑ Continued on the attached sheet.

_____
Complainant's signature

Landon C. Hoffman, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___12/11/19___

_____
Judge's signature

City and state:  ___San Francisco, California___      Hon. Thomas S. Hixson, U.S. Magistrate Judge
*Printed name and title*

1-MJT

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Landon C. Hoffman, having been duly sworn, hereby depose and state as follows:

### I. INTRODUCTION

1. I submit this affidavit in support of an application for a criminal complaint charging FROYLAN SANCHEZ, a/k/a Froylan Azhea Martinez-Sanchez, a/k/a Daniel Sanchez Bustos ("FROYLAN ")[1] and JOSE IVAN SANCHEZ ("JOSE") with violations of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C) (conspiracy to distribute and to possess with intent to distribute controlled substances) arising from their participation in a conspiracy to distribute and possess with intent to distribute methamphetamine and cocaine.

2. The facts set forth in this affidavit are based on my own personal knowledge, as well as information I obtained from other individuals during my participation in this investigation. The facts are also based upon my review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and the circumstances described, preliminary translations of recorded communications performed by interpreters and law enforcement personnel, and information gained through my training and experience. Where statements made by other individuals are referenced in this affidavit, such statements are described in summary unless otherwise noted. Similarly, where information contained in reports, recordings, and/or other documents or records is referenced in this affidavit, such information is also described in summary unless otherwise noted.

3. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of a complaint, it does not set forth each and every fact that I, or others, have learned during the course of the investigation. As this investigation progresses, my understanding of the significance of certain events and evidence may change or evolve.

### II. AGENT BACKGROUND

4. I am employed as a Special Agent with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement / Homeland Security Investigations ("HSI"). I am currently assigned to the Office of the Special Agent in Charge, San Francisco, California. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

5. In January 2018, I graduated from the Criminal Investigator Training Program and the HSI Special Agent Training Program at the Federal Law Enforcement Training Center. Before working with HSI, I spent approximately nine years as a police officer with the Union

---

[1] Because this affidavit refers to two individuals with the last name Sanchez, I refer to each individual by his first name.

1

City Police Department in Georgia. During my tenure with the Union City Police Department, I served as a patrol officer, special investigator, sergeant, and lieutenant. In the course of my law enforcement career, I have received over 2500 hours in training, including training in the areas of narcotics investigations, advanced investigative techniques, evidence collection, crime-scene processing, criminal law and procedure, warrant preparation, interviewing, and surveillance techniques. I hold a Bachelor of Science in Criminal Justice and a Master's degree in Public Administration.

6. During the course of my law enforcement career, I have participated in at least 100 narcotics investigations. I have spoken with confidential sources and witnesses who had personal knowledge regarding drug trafficking organizations. In addition, I have discussed with numerous law enforcement officers the methods and practices used by drug traffickers. I have participated in many aspects of drug investigations including, but not limited to, undercover operations, controlled purchases of narcotics, physical and electronic surveillance, and court-ordered wiretap investigations. I have prepared and executed both state and federal search warrants.

7. Through my training, education, experience, and my conversations with other agents and officers who conduct drug investigations, I have become familiar with drug traffickers' methods of operation, including, but not limited to, the manufacturing, distribution, storage, and transportation of controlled substances, and the methods used by drug traffickers to collect, transport, safeguard, remit, and/or launder drug proceeds. I am familiar with the ways in which various controlled substances, including methamphetamine and cocaine, are packaged for sale, sold, and ingested.

## III.    APPLICABLE LAW

8. Under Title 21 of the United States Code, Section 841(a), it is unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

9. Under Title 21 of the United States Code, 846, it is unlawful for any person to attempt or conspire to commit any offense in Title 21, Subchapter I, which includes Section 841(a)(1), referenced above.

## IV.    FACTS ESTABLISHING PROBABLE CAUSE

### August 23, 2019 Sale of Methamphetamine and Cocaine

10. On August 23, 2019, an agent employed by the Napa Special Investigations Bureau ("NSIB"), acting in an undercover capacity, participated in several recorded phone conversations with an individual the agent later identified as FROYLAN SANCHEZ. The purpose of the undercover agent's conversations with FROYLAN was to arrange an undercover

2

purchase of narcotics in Napa County.[2] Over the course of these August 23, 2019 phone conversations, the undercover agent ("UCA") arranged to purchase two "Cristinas" and one-half of "blanca" from FROYLAN for "26." UCA later advised me that he understood this to mean that he would purchase approximately one pound of methamphetamine ("Cristinas") and one half-ounce of cocaine ("Blanca") for $2,600. UCA and FROYLAN arranged to meet later that day near an El Pollo Loco restaurant in Napa, California.

11. Later that afternoon, UCA met with two Hispanic males in the parking lot of El Pollo Loco, located on Soscol Avenue in Napa. UCA later identified these two males as FROYLAN SANCHEZ and FROYLAN's brother, JOSE SANCHEZ. Throughout the meeting, FROYLAN and JOSE remained seated in a sport utility vehicle ("SUV") they arrived in together. FROYLAN sat in the front passenger seat of the SUV, while JOSE sat in the driver seat. UCA approached the passenger-side of the SUV, next to FROYLAN. During this meeting, UCA handed FROYLAN approximately $2,600 in United States currency. FROYLAN handed UCA a plastic grocery bag containing three separate packages. UCA then returned to his unmarked vehicle and both parties drove away.

12. Minutes later, FROYLAN called UCA from a cellular phone. FROYLAN explained that the bag he handed UCA contained "two orders" for another person, which FROYLAN had given UCA by mistake. At FROYLAN's request, UCA returned to the El Pollo Loco parking lot and gave FROYLAN one of the three packages contained in the grocery bag.

13. The two remaining packages, Items 1-2 and 1-3, later underwent presumptive testing. The substance contained in Item 1-2 tested presumptively positive for methamphetamine, weighing approximately 455.5 grams (gross). The substance contained in Item 1-3 tested presumptively positive for cocaine, weighing approximately 14.3 grams (gross).

### September 13, 2019 Sale of Methamphetamine

14. Between September 10, 2019 and September 12, 2019, UCA and FROYLAN spoke by phone in order to negotiate an additional narcotics transaction. Ultimately, on September 13, 2019, UCA and FROYLAN agreed to meet later that day near the same location as the August 23, 2019 transaction.

15. On the afternoon of September 13, 2019, UCA met with FROYLAN and JOSE SANCHEZ at the El Pollo Loco parking lot on Soscol Avenue in Napa. Throughout the meeting, FROYLAN and JOSE remained seated in the same SUV they arrived in for the prior meeting. This time, however, JOSE sat in the front passenger seat, while FROYLAN sat in the driver seat. UCA approached the passenger-side of the SUV, next to JOSE. During this meeting, UCA handed JOSE approximately $4,000 in United States currency. JOSE handed

---

[2] The undercover agent is fluent in both Spanish and English. The phone conversations described in this affidavit occurred Spanish and have been translated to English by Spanish speaking interpreters. Additionally, this affidavit only contains a portion of FROYLAN's recorded conversations with the undercover agent.

3

UCA a black yard waste bag containing two separate packages. UCA returned to his unmarked vehicle and both parties drove away.

16.     The two packages inside the yard waste bag, Items 4-2 and 4-3, later underwent presumptive testing. The substance contained in Item 4-2 tested presumptively positive for methamphetamine, weighing approximately 443.2 grams (gross). The substance contained in Item 4-3 tested presumptively positive for methamphetamine, weighing approximately 458.1 grams (gross).

### November 7, 2019 Sale of Methamphetamine

17.     On November 7, 2019, UCA and FROYLAN spoke further by phone. During these conversations, UCA and FROYLAN negotiated an additional transaction. Ultimately, after additional conversations, UCA and FROYLAN agreed to meet later that night near a Walmart in American Canyon, California.

18.     That night, around 10:40 p.m., UCA met with FROYLAN and JOSE SANCHEZ in the parking lot of a Chevron gas station located on Napa Junction Road in American Canyon, near a Walmart. UCA approached the driver's side of the SUV, where he spoke with FROYLAN, seated in the driver's seat. JOSE SANCHEZ sat in the front passenger seat of the SUV. UCA handed FROYLAN approximately $4,000. FROYLAN handed UCA a small cardboard box containing two ziplock bags of suspected methamphetamine. UCA returned to his unmarked vehicle and both parties drove away.

19.     The contents of the two ziplock bags inside the cardboard box, Items 7-2A and 7-2B, later underwent presumptive testing. The substance contained in Item 7-2A tested presumptively positive for methamphetamine, weighing approximately 450.7 grams (gross). The substance contained in Item 7-2B tested presumptively positive for methamphetamine, weighing approximately 449.6 grams (gross).

//

//

//

//

//

//

//

//

//

## V. CONCLUSION

20.     Based upon the information contained within this affidavit, I request that the Court issue a complaint charging FROYLAN SANCHEZ and JOSE IVAN SANCHEZ with conspiracy to distribute and to possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C).


I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

Respectfully submitted,

*[signature]*

Landon C. Hoffman
Special Agent
Homeland Security Investigations


Subscribed and sworn to before me on December  11 , 2019.

*[signature]*

HONORABLE THOMAS S. HIXSON
UNITED STATES MAGISTRATE JUDGE

5